FILED

JUL 25 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

In The United States District Court

For The District Of California

Berson C. Aero, 02548-849        PO Box 24550
        Plaintiff,               Tucson AZ 85734

v.

United States Of America;        1:14 cv 1163 MJS (PC)
Federal Bureau Of Prisons;
Paul Copenhaver, Warden;
First Name Unknown ("FNU")
Argent, Assistant Warden;
FNU Garcia, Captain of the Guards;
FNU Fenton, Lieutenant of the Guards;
John Doe #1, Lieutenant of the Guards;
John Doe #2, Lieutenant of the Guards;
FNU Cisneros, Prison Guard;
J. Ontiveroz, Prison Guard;
FNU Olivarez, Prison Guard;
Jane Doe, Disciplinary Hearings Officer;
Company "X";
        Defendants.

RECEIVED

JUL 25 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

COMPLAINT

I. Introduction: The Foregoing is a Tort and Civil Rights
action. Plaintiff brings this Civil Rights action against the Federal

Bureau of Prisons (hereinafter, "Bureau" or "BOP") and the several named prison officials for violating his constitutional rights; he brings the Tort claims against these United States of America and one unknown manufacturer of the so-called "Black Box," (hereinafter, "Company X") for injury to his person, and an additional claim against these United States of America, for loss or destruction of his property. Plaintiff seeks compensatory, punitive damages as well as injunctive relief.

## II.   JURISDICTION

1.   Plaintiff invokes this Court's Pendent and Diversity jurisdiction; the Federal Tort Claims Act pursuant to 28 U.S.C. §§ 2671-2680, and 1346 (b); and its Civil Rights jurisdiction pursuant to Bivens v. Six Unknown Federal Agent, ___ U.S. ___ (cite unavailable).

## III.   PARTIES

2.   Plaintiff, Gordon C. Reid, is a citizen of these United States of America who, at all times herein complained of, was a prisoner of the United States of America in custody of its component part the BOP immured at the United States Penitentiary Atwater located in Atwater, California. Plaintiff is presently immured at USP Tucson, P.O. Box 24550, Tucson, Arizona 85734.

3. Defendant "Company X" is a business that manufactures the so-called "Black Box"; Company X's true name and address is presently unknown.

4. Defendant United States of America requires no further explication.

5. Defendant, Federal Bureau of Prisons is a component part of the U.S.A., headquartered in Washington, D.C.

6. Defendant, Paul Copenhaver, at all times herein complained of, was an employee of the Bureau acting in capacity of Warden, he has a principle place of employment at P.O. Box 019001, Atwater, California.

7. Defendant (FNU) Brent, at all times herein complained of, was an employee of the Bureau acting in the capacity of Associate Warden, he has a principle place of employment at P.O. Box 019001, Atwater, California.

8. Defendant (FNU) Garcia, at all times herein complained of, was an employee of the Bureau acting in the capacity of Captain of the guards, he has a principle place of employment at P.O. Box 019001, Atwater, California.

9. The following Defendants who, unless otherwise indicated, acted in the simple capacity of prison guard: Lieutenants Fenton, John Doe #1, John Doe #2, prison guards of Entrecar, Oliverez, and Cisneros, all of whom are employees of the Bureau at P.O. Box 019001, Atwater, California.

10. Defendant Jane Doe, is an employee of the United States. At all times relevant to the foregoing Complaint Defendant Jane Doe was employed at USP Atwater in the capacity of Disciplinary Hearings Officer ("DHO"). She has a principle place of employment at P.O. Box 019001, Atwater, California.

11. Plaintiff brings this action against Defendants, and each of them, in their personal, individual, and official capacities.

## IX. FACTS

12. At all below-specified times, and on all occasions herein complained of, Plaintiff was immured at USP Atwater.

13. On or about October 30, 2012, Plaintiff, who was then housed in Segregation, was ordered to submit to restraints for purpose of being removed from the cell he was being housed in (hereinafter, "subject cell").

14. Plaintiff and another prisoner who was housed in the subject cell were both removed from the subject cell without being allowed to either pack their respective personal property or to even designate to whom the property belonged.

15. After both Plaintiff and the other prisoner

were removed from the subject cell sans property, and escorted to separate locations. Defendant Cisneros returned to the subject cell with the purpose of retrieving each of the prisoners' personal property, or minimally, retrieving Plaintiff's personal property, in accordance policy and procedure.

16. Defendant Cisneros did not, however, retrieve all of Plaintiff's property, leaving behind, among other things, one (1) MP3 player with headphones containing approximately 50 songs valued at approximately $154.92, although informed

17. On or about April 14, 2013, while handcuffed behind the back, Defendant J. Ontiveroz grabbed Plaintiff in a rough manner and slammed Plaintiff face-first into the wall and then slammed Plaintiff, who throughout remained handcuffed behind the back, to the floor, all without cause or justification.

18. While lying on the floor, handcuffed and offering no resistance whatsoever, Defendant J. Ontiveroz grabbed Plaintiff's head and repeatedly smashed it into the iron rail running along the bottom of the tier.

19. As a direct and proximate result of Defendant J. Ontiveroz's unlawful conduct as described above (par 17-

18.) Plaintiff suffered injury to his head to include a concussion and headaches.

20. On or about April 3, 2013, Defendants John Doe #1, John Doe #2, Fenton, Garcia, Parent, and Copenhaver, individually and singularly, or in combination, concert, and agreement, by artifice and contrivance, placed Plaintiff in full hand restraints (i.e., handcuffs, blackbox, restraining chain, and leg shackles) for Twenty-Four (24) hours, all without cause and justification.

21. The above Defendants (par 20) knew, or reasonably should have known, that by policy, rule, regulation or directive, a prisoner is not to be placed in full restraints unless it is necessary to protect him from himself; or it is necessary to protect others from him; or it is necessary to prevent the continued destruction of poverty property.

22. Defendants (par 20) knew, or reasonably should have known, that Plaintiff had not engaged in any conduct that would have permitted them to place Plaintiff in full restraints on April 3, 2013.

23. Defendants (par 20) knew, or reasonably should have known, that in accordance with policy, rule, regulation,

or directive, they were required to review a prisoner's placement in full restraints every two hours, and unless the prisoner continued to exhibit any of the above-specified behavioral traits (par. 21), the prisoner's release from full restraints was mandated/required

24. Defendants (par. 20) ignored or otherwise intentionally disregarded the above-specified dictate (par. 23) by repeatedly fabricating a basis to prolong Plaintiff's placement in full, hard restraints.

25. Defendants (par. 20) knew, or reasonably should have known, that whenever it is necessary to place a prisoner in full restraints, policy, rule, regulation or directive, require the prisoner be placed in soft-restraints

26. As a direct or proximate result of the above referenced machinations of Defendants (par. 20), and each of them, Plaintiff was caused to be placed in hard, full restraints for a period of twenty-four hours.

27. On or about May 1, 2013, Defendants John Doe #1, John Doe #2, Fenton, Garcia, Brent, and Copeshaver, individually and singularly, or in combination, consort, and agreement, by artifice and contrivance, placed Plaintiff in full, hard restraints for forty-eight (48) hours, all without cause or

justification.

28. The above Defendants (par. 27) knew, or reasonably should have known, with respect to Plaintiff's placement in full, hard restraints, that by policy, rule, regulation or directive, a prisoner is not to be placed in full restraints unless it is necessary to protect him from himself, protect others from him, or to prevent destruction of property.

29. The above Defendants (par. 27) knew, or reasonably should have known, with respect to Plaintiff's placement in full, hard restraints on or about May 7, 2013, that Plaintiff had not engaged in any conduct that would have permitted them to place Plaintiff in full, hard restraints.

30. The above Defendants (par. 27) knew, or reasonably should have known, with respect to Plaintiff's placement in full, hard restraints on or about May 7, 2013, that in accordance with policy, rule, regulation or directive, they were required to review a prisoner's placement in full, hard restraints every two hours, and unless the prisoner continued to exhibit any of the above-specified behavioral traits (par. 28), the prisoner's release from full restraints was mandated and required.

31. The above Defendants (par. 27) knew, or reasonably

should have known, with respect to Plaintiff's placement in full, hard restraints on or about May 7, 2013, the above-specified rule, policy, or regulation set forth in par. 30, supra, but ignored or otherwise intentionally disregarded it by repeatedly fabricating a basis to prolong his placement in full, hard restraints.

32. Defendants (par. 27) knew, or reasonably should have known, that Bureau policy requires the use of soft restraints whenever placing prisoners in full restraints, with the exception of transportation; and with respect to the "Black Box" used as part of the ensemble constituting "hard restraints," Plaintiff says:

(a) the Black Box is manufactured by Company X, and may, or may not be formally named a "Black Box";

(b) that when the Black Box is placed over handcuffs, the handcuffs become immobile and begin to press into the wrist, which after an hour or so becomes torturously painful;

(c) after ten or so hours in the Black Box it begins to chafe the skin off;

(d) on each occasion Plaintiff was placed in the Black Box the skin on his wrist was rubbed off, often in the same spots, leaving permanent scarring;

(e) Defendants, and each of them, understand that prolong placement in the Black Box is painful, but nonetheless

placed Plaintiff in it for first, twenty-four (24) hours; and next,
forty-eight (48) hours;

(f) or, in the alternative, that Defendants,
and each of them, caused Plaintiff to be placed in a black box
with intention of inflicting pain;

(g) or, in the alternative, that Defendants, and
each of them, caused Plaintiff to be placed in a black box with
intention of inflicting injury

(h) Defendants knew, or reasonably should
of known, that Plaintiff would not be able to sleep, eat, or
defecate throughout such time he was "black boxed."; and that
he could not, in fact, properly engage in these basic acts

33. As a direct and proximate result of the above
referenced machinations of Defendants (par. 27-32, supra),
and each of them, Plaintiff was caused to be wrongfully and
unlawfully placed in full, hard restraints (to include black box)
for a period of forty-eight (48) hours.

34. On or about May 3, 2013, Defendants of Antiverez,
John Doe #1, John Doe #2, Fenton, Garcia, Parent, and Copen-
haver, individually and singularly, or in combination, consent,
and agreement, by artifice and contrivance, placed Plaintiff
in full restraints for an additional twenty-four hours directly
subsequent the above forty-eight hour placement in full,

hard restraints (as set forth in paragraphs 27-32, supra), all
without cause or justification.

35. In further_ance_ of the above referenced machinations
(par 34, supra) Defendants J. Ontiveroz, Fenton and others not
herein named, did, on May 3, 2013, or thereabout commit the
following acts, all within sight and hearing of Defendants
Garcia and Parent:

(a) Defendants Fenton and J. Ontiveroz while
removing the full, hard restraints Plaintiff had been unlawfully
placed in (see paragraphs 27-32, supra), simultaneously
handcuffed Plaintiff behind the back;

(b) Defendants Fenton and J. Ontiveroz, and
others not named herein, then removed Plaintiff from the cell
he had been housed and escorted him, to another cell occupied by
"two other prisoners" with the stated purpose of placing Plaintiff
in the cell with the other two prisoners;

(cc) upon being ordered to submit to
restraints for the purpose of placing Plaintiff in the cell, the
two other prisoners became irate, and began screaming-out
threats against Plaintiff, informing Defendants J. Ontiveroz,
Fenton, Garcia, Parent, and others that if Plaintiff was
placed in the cell with them they were going to do bodily
harm to him;

(d) Defendants J. Ontiveroz, Fenton,

Garcia, and Brent either ordered, or assented to ordering the other two prisoners being ordered to submit to restraints (i.e., being handcuffed behind their back) for the purpose of placing Plaintiff in the cell with them;

(E) in response, out of concern for his safety, Plaintiff began to loudly, clearly, and vociferously voice his objection to being placed in the cell with the two other prisoners;

(F) Defendants J. Ontiveroz, Fenton, and others not herein named, proceeded to handcuff the two other prisoners' hands behind their backs through the open tray slot, and thereupon unlock the cell door;

(g) when Defendants J. Ontiveroz, Fenton, and others not herein named, discovered the two other prisoners attempting to impede any ingress upon opening the door to the cell, they began to harshly and roughly shove Plaintiff into the two other prisoners, who in response, began shoving Plaintiff back out of the cell;

(h) Defendants J. Ontiveroz, Fenton, and others not herein named, thereupon forced their way into the cell manhandling Plaintiff and the two other prisoners, causing injury to one of them;

(i) Defendants (par. 35(h)) then exited the cell and locked the door, and through the tray slot, which remained open, ordered Plaintiff and the two other prisoners to come to the tray slot to enable Defendants (par. 35(h)) to

remove the handcuffs from each of them;

(j) out of concern for his safety, and to prevent the two other prisoners from being freed from their restraints and thus at liberty to carry out their threats against Plaintiff, Plaintiff stepped in front of the tray slot in a manner that would prevent any one from being freed of their restraints inside the cell;

(k) one of the two other prisoners informed Defendant J. Ontiveros that he needed medical attention for the injury caused by the prison guards as above-referenced (par. 35(h));

(l) when Plaintiff refused to cede the tray slot Defendant J. Ontiveros falsely claimed that the prisoner requesting medical attention had stated his injury had been inflicted by Plaintiff biting him;

(m) Defendants (35(h)), and each of them, knew or reasonably should have known, J. Ontiveros was lying, and could have easily and effortlessly exposed said lie by simply asking the injured prisoner or observing his wound, but said Defendants together with Garcia and Brent, willfully avoided doing so;

(n) Defendants Fenton, J. Ontiveros, Garcia, Brent, and Copenhaver thereupon turned a blind eye to J. Ontiveros's prevarication with the purpose and design of using said prevarication to "justify" wrongfully and unlawfully restraining Plaintiff to a mattress and concrete slab for twenty-four hours; to wit, subterfuge for what was in fact punishment for Plaintiff's refusal to cell with the two prisoners who threatened,

in the presence of Defendants J. Ontiveros, Fenton, Garcia, Parent, and each of them, to beat Plaintiff, and do him other mortal harm;

      (c) that Defendants J. Ontiveros, Fenton, Garcia, Parent, and Copenhaver did in fact utilize the above referenced subterfuge (par. 35(n)) and, on May 3, 2013, did activate a "use of force" team to escort Plaintiff, who at all times before and after remained restrained, to a "hard cell" whereupon Defendants, and each of them, caused Plaintiff to be restrained to a mattress and concrete slab for twenty-four (24) hours.

      36. In furtherance of the above referenced design and scheme, as well in retaliation for Plaintiff having reported him for assaulting Plaintiff (see paragraphs 17-19, supra), J. Ontiveros wrote a false Incident Report charging Plaintiff with, inter alia, with assaulting and kidnapping the above referenced prisoner who was injured by one of the prison guards as set forth in paragraphs 35, subparagraphs (g) and (h), if not by J. Ontiveros, himself.

      37. Defendant Jane Doe was the Disciplinary Hearings Officer who heard and adjudged the Incident Report written by Defendant J. Ontiveros (as referenced in paragraph 36, supra).

38. In defense of the J. Ontiveroz Incident Report (per 36, supra), Plaintiff called the injured prisoner who asserted to give testimony that (a) the cause of injury was not Plaintiff, but staff, and (b) he had not been bitten, as well as (c) he never informed J. Ontiveroz at any time that Plaintiff had in any manner assaulted or battered him.

39. Defendant Jane Doe knew, or reasonably should have known, that in accordance with Bureau policy, rule, or regulation, Plaintiff was entitled to be present when evidence is given at his disciplinary hearing; specifically, when a witness gives his or her statement, except in certain precisely enumerated circumstances; none of which existed at the time of his hearing on the J. Ontiveroz Incident Report, and with respect to the above-referenced witness.

40. Defendant Jane Doe nonetheless ejected Plaintiff from the hearing with the specific purpose of taking the injured prisoner's testimony outside the hearing of Plaintiff, and, if found to support Plaintiff's defense, mischaracterizing the nature and substance of the injured prisoner's statement so that it would support J. Ontiveroz's fictitious version of the events at issue.

41. Immediately after the injured prisoner gave his

statement to the DHO, John Doe, and upon exiting the room where the hearing was being held, but before Plaintiff re-entered said hearing room, the injured prisoner assured Plaintiff that he had in fact given testimony (or a statement) consistent paragraph 38, subparagraphs (a)-(c).

42. Upon re-entering the hearings room John Doe falsely claimed the injured prisoner's statement supported that of J. Ontiveroz with respect to issues charged, and that said prisoner did in fact claim Plaintiff assaulted him.

43. As a consequence, Defendant John Doe proceeded to find Plaintiff committed the charged offenses, and sanctioned him by imposing 45 days Disciplinary Segregation, 45 days loss of good conduct time, as well as deprivation other privileges.

44. Defendant John Doe knew, or reasonably should have known, that pursuant to Bureau policy, rule or regulation a prisoner only has approximately twenty (20) days to appeal a DHO's findings and sanctions to the Regional Office calculated from either the day the hearing was held, or the day the prisoner receives the "Discipline Hearing Report."

45. Defendant John Doe knew, or reasonably should have known, Plaintiff intended to appeal her decision with

respect to the above-referenced disciplinary hearing.

46. That Defendant Jane Doe endeavored to obstruct, impede, or prevent Plaintiff from appealing her decision by informing Plaintiff only that he would have twenty (20), days or thereabout, to appeal from the time he received the disciplinary hearing report, which, because she was "backed-up" would not be for a month or so.

47. Defendant Jane Doe knew, or reasonably should have known, that if Plaintiff did not appeal her findings sans Disciplinary Hearing Report within twenty (20) days, he would be unable to appeal thereafter unless she provided, and issued a Disciplinary Report to Plaintiff, which Defendant Jane Doe had no intention of doing.

48. Defendant Jane Doe has never, in fact, provided Plaintiff with a Disciplinary Hearing Report with respect to the hearing at issue herein; furthermore, all of Plaintiff's requests to other prison officials for said document have been to no avail.

49. Defendants John Doe #1, John Doe #2, Cisneros, I Ontiveroz, Oliveroz, Festers, Garcia, Copenhaver, and others not named herein, knew, or reasonably should have known, that Bureau policy, rule, or regulation required Plaintiff be provided

five (5) hours of outside exercise per week while confined in segregation except as specifically prescribed in relation to serious instances of misconduct related to outside exercise, and then only by direction of the Warden, who may suspend a prisoner's outside recreation for a very limited period of approximately a week.

50. Except several occasions, Plaintiff was repeatedly and systematically deprived of outside recreation between September 27, 2013, and June 17, 2014, or thereabout, by various prison guards for the most minor and trivial reasons, real or imagined; and on many occasions, for no reason related to Plaintiff at all, by

51. The above specified deprivation of outside exercise (or "recreation") was summarily imposed without resort to the prescribed process mandated by Bureau policy, rule, or regulation for imposition of such deprivation (par. 50).

52. Throughout the above specified period between 09.27.13 and 06.17.14, Plaintiff repeatedly complained to Defendants (par. 49, supra) who, without exception, approved of Plaintiff being deprived of outside exercise in the manner as specified in paragraph 50, supra; and, indeed, with respect to J. Ontiveroz, Oliverez, Cisneros, and others not enumerated or named herein, are the prison guards who summarily imposed the above

Page 18 of 28

specified deprivation (par. 50, supra).

## V. CLAIMS

### Civil Rights Claims

53. That Defendants John Doe #1, John Doe #2, Fenton, Garcia, Brent, and Copenhaver, acting individually and singularly, or in combination, consort, and agreement, on or about April 3, 2013, did without probable cause or legal justification seize Plaintiff's body by placing it in chains and various other restraining implements, and by refusing to release him therefrom for a period twenty-four (24) hours, all in contravention to the Fourth Amendment of the United States Constitution; to wit, UNLAWFUL SEIZURE;

(a) Plaintiff hereby incorporates by reference paragraphs nos 20-26, inclusive, in this paragraph 53, subparagraph (a), as if fully set forth herein.

54. That Defendants John Doe #1, John Doe #2, Fenton, Garcia, Brent, and Copenhaver, acting individually, and singularly, or in combination, consort, and agreement, on or about May 1, 2013, did, without probable cause or legal justification, seize Plaintiff's body by placing him in chains and various other restraining implements, and by refusing to release him there-

from for a period of forty-eight (48) hours, all in contravention to the Fourth Amendment of the United States Constitution; to wit, UNLAWFUL SEIZURE

(d) Plaintiff hereby incorporates by reference paragraphs nos. 27-33, inclusive, in this paragraph 54, as if fully set forth herein.

55. That Defendants John Doe #1, John Doe #2, Fenton, Garcia, Brent, and Copenhaver, acting individually or singularly, or in combination, consort, and agreement, on or about May 3, 2013, did, without probable cause or legal justification, seize Plaintiff's person by restraining him to a mattress and concrete slab, and refusing to release him therefrom for a period of twenty-four (24) hours, all in contravention to the Fourth Amendment of the United States Constitution; to wit, UNLAWFUL RE-STRAINT

(a) Plaintiff hereby incorporates by reference paragraphs 34-48, inclusive, in this paragraph 55, as if fully set forth herein.

56. That Defendant J. Ontiveroz, on or about May 3, 2013, did falsely and maliciously report that Plaintiff had assaulted, battered, and kidnapped another prisoner in repayment for Plaintiff having reported him, J. Ontiveroz, for assaulting and battering Plaintiff on or about April 14, 2013,

and by such deceit did cause Plaintiff to be wrongfully restrained and deprived of other liberties, privileges and immunities under the law; and all, in contravention to the First, and Fifth Amendments to the United States Constitution; to wit, Retaliation; Unlawful Restraint: (a) Plaintiff hereby incorporates by reference paragraphs 17 through 19 and 35(l) and 36, supra, as if fully set forth in this paragraph 56.

57. That Defendant J. Ontiveroz, on or about April 14, 2013, did assault and batter Plaintiff by repeatedly slamming his head into a metal railing causing Plaintiff pain and suffering including a concussion and severe headaches, all without legal cause or justification in contravention to the Eighth Amendment of the United States Constitution; to wit, Excessive Use of Force;
(a) Plaintiff hereby incorporates by reference paragraphs 17 through 19, supra, inclusive, as if fully set forth in this paragraph 57.

58. That Defendant Jane Doe, in late May or Early June of 2013, did refuse to allow Plaintiff to be present during the testimony (or statement) of Plaintiff's witness at his disciplinary hearing, lied about the substance of said witness's testimony to Plaintiff's detriment, and obstructed Plaintiff from appealing by incorrectly and falsely informing him that he must procure the Disciplinary Hearing Report to appeal and then

refusing to provide him with a copy of said report; and that by such treachery and deceit did deprive Plaintiff of Good Conduct Time and other rights and immunities under the law, all in contravention to the Fifth Amendment of the United States Constitution; to wit: DEPRIVATION OF DUE PROCESS;

      (a) Plaintiff hereby incorporates by reference paragraphs 37 through 48, supra, inclusive, as if fully set forth in this paragraph 58.

      59. That Defendants S. Ontiveros, Oliverez, John Doe #1, John Doe #2, Fenton, Garcia, Brent, Copenhaver, Bureau of Prisons, and others not herein named, did, between September 27, 2012, and June 17, 2013, singularly and individually, or by combination, consent, and agreement, either directly deprived Plaintiff of outside exercise, or officially sanctioned said deprivation, by prison Guards for any minor, real or imagined transgression in contravention to Bureau policy, rule, or regulation; in contravention to the 4th and 5th Amendments of the United States Constitution; to wit, UNLAWFUL RESTRAINT and DEPRIVATION OF DUE PROCESS, respectively.

      (a) Plaintiff hereby incorporates by reference paragraphs 49 through 52, supra, inclusive, as if fully set forth in this paragraph 59.

TORT CLAIMS *

60. That Defendant Cisneros, on or about October 30, 2012, did refuse or otherwise failed to ensure Plaintiff's property was secured in accordance with Bureau policy, rule, or regulation, and as a direct or proximate result of this dereliction Plaintiff was deprived of one (1) MP3 player, to wit, NEGLIGENCE:

(a) Plaintiff hereby incorporates by reference paragraphs 13 through 16, supra, inclusive, as if fully set forth in this paragraph 60.

61. That Defendant J. Ontiveroz, on or about April 14, 2013, by repeatedly slamming Plaintiff's head into an iron rail without legal cause or justification, did cause injury to Plaintiff, to wit, NEGLIGENT USE OF FORCE and ASSAULT AND BATTERY:

(a) Plaintiff hereby incorporates by reference paragraphs 17 through 19, inclusive, as if fully set forth in this paragraph 61.

(April 3 - April 4, 2013)

62. That Defendants John Doe #1, John Doe #2, Heaton, Garcia, Brent, and Copenhaver, on or about April 3, 2013, by placing Plaintiff in full hard restraints for a period of twenty-four (24) hours without legal cause or justification and in contravention to Bureau policy, rule, or regulation, did injure Plaintiff & deprive

* Plaintiff recognizes and brings all Tort Claims against the USA.

Page 23 of 28

him of liberty, and inflict pain and suffering, to wit, UNLAWFUL RESTRAINT & NEGLIGENT USE OF FORCE

(a) Plaintiff hereby incorporates by reference paragraphs 20-26, supra, inclusive, in this paragraph 62 as if fully set forth herein.

(May 1 - May 3, 2013)

63. That Defendants John Doe #1, John Doe #2, Fenton, Garcia, Brent, and Copenhaver, acting individually or in combination, consort, and agreement, by placing Plaintiff in full, hard restraints for a period of forty-eight (48) hours without legal cause or justification, and in contravention to Bureau policy, rule, or regulation, did injure Plaintiff, deprive him of liberty, and inflict pain and suffering, to wit, UNLAWFUL RESTRAINT & NEGLIGENT USE OF FORCE

(a) Plaintiff hereby incorporates by reference paragraphs 27-33, supra, inclusive, in this paragraph 63 as if fully set forth herein.

(May 3 - May 4, 2013)

64. That Defendants John Doe #1, John Doe #2, Fenton, Garcia, Brent, and Copenhaver, acting individually and singularly, or in combination, consort, and agreement, on May 3, 2013, by placing Plaintiff in full restraints for twenty-four (24) hours, without legal cause or justification, and in contravention to Bureau policy, rule, or regulation, did injure Plaintiff, deprive him of liberty, and inflict pain and suffering, to wit, UNLAWFUL RESTRAINT & NEGLIGENT USE OF FORCE :

(c) Plaintiff hereby incorporates by reference paragraphs 34-48, supra, inclusive, in this paragraph 64 as if fully set forth herein.

65. That Defendants J. Ontiveroz, John Doe #1, John Doe #2, Fenton, Garcia, Copenhaver, and others not named here, by placing Plaintiff in hard, full restraints, as opposed to the soft restraints required by Bureau policy, did inflict injury, pain, suffering, and permanent scarring on Plaintiff, to wit, GROSS NEGLIGENCE, or alternatively, NEGLIGENCE:

(a) Plaintiff hereby incorporates by reference paragraphs 20, 27, 30-32, supra, inclusive, in this paragraph 65 as if fully set forth herein.

66. That Defendant Company X, by manufacturing the within referenced Black Box, a product in regard to which inflicts pain and suffering, and scars or chafes the skin of a person, when used to restrain a person for periods in excess of approximately ten (10) hours, is NEGLIGENT:

(a) Plaintiff hereby incorporates by reference paragraphs 20, 27, and 32 (a)-(d), supra, inclusive, as if fully set forth in this paragraph 66.

## VII. DAMAGES

(1) CIVIL RIGHTS CLAIMS - DAMAGES

A. Against Defendants John Doe #1, John Doe #2, Fenton, Garcia, Brent, and Copenhaver, individually or in combination, with respect to Plaintiff's Unlawful Seizure on or about April 3, 2013, Plaintiff seeks $30,000.00 in compensatory damages;

B. Against the same above-named Defendants, individually or in combination, with respect to Plaintiff's Unlawful Seizure on or May 1 through May 2, 2013, Plaintiff seeks $130,000.00 in compensatory damages and $500,000.00 in exemplary damages;

C. Against the same above-named Defendants, individually or in combination, with respect to Plaintiff's Unlawful Seizure on or about May 3, through May 4, 2013 (together with Defendant J. Ontiveroz, as further explicated in paragraph 56, supra), Plaintiff seeks $100,000.00 in compensatory damages and $500,000.00 in punitive damages

D. Against Defendant J. Ontiveroz with respect to Plaintiff's Retaliation claim, Plaintiff seeks $120,000.00 in compensatory damages and $250,000.00 in exemplary damages;

E. Against Defendant J. Ontiveroz with respect to Plaintiff's Excessive Use of Force claim, Plaintiff seeks $50,000.00 in compensatory damages;

F. Against Defendant Jane Doe with respect to Plaintiff's Deprivation of Due Process claim, Plaintiff seeks $50,000.00 in compensatory damages;

G. Against Defendants J. Ontiveroz, Oliverez, John Doe #1, John Doe #2, Fenton, Garcia, Brent, and Copenhaver as well as the

Federal Bureau of Prisons, with respect to Plaintiff's Deprivation of Due Process claim, Plaintiff seeks $54,000.00 in compensatory damages, and $250,000.00 in punitive damages.

### (2) Tort Claims · Damages

A. Against Defendant United States of America with respect to the below specified claims, Plaintiff seeks the concurrently stated damages:

(i) Negligence as specified in par. 60, supra, Plaintiff seeks $140.00 in compensatory damages;

(ii) Negligent Use of Force and Assault and Battery (¶61) individually or jointly, Plaintiff seeks $30,000.00 in compensatory damages;

(iii) Unlawful Restraint and Negligent Use of Force (¶62) separately or jointly, Plaintiff seeks $50,000.00 in compensatory damages;

(iv) Unlawful Restraint and Negligent Use of Force (¶63) separately and jointly, Plaintiff seeks $150,000.00 in compensatory damages;

(x) Unlawful Restraint and Negligent Use of Force (¶64) separately and jointly, Plaintiff seeks $175,000.00 in compensatory damages;

(xi) Gross Negligence, or alternatively, Negligence (¶65) Plaintiff seeks $40,000 and $30,000.00, in compensatory damages, respectively;

B. Against Defendant Company X with respect to the claim of Negligence (¶66), Plaintiff seeks $500,000 in compensatory damages;

C. Against Defendants, and each of them, Plaintiff seeks treble or double damages, interest, costs, and fees.

2. Gordon C. Reid, hereby swear and aver that all allegations contained within the foregoing Complaint are true and correct.

Signed under penalty of perjury pursuant to 28 U.S.C. §1746.

Executed on: July 21, 2014

Gordon C. Reid

Gordon C. Reid