UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| GORDON V. REID, | CASE NO. 1:14-cv-1163-LJO-MJS (PC) |
|---|---|
| Plaintiff, | **ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |
| v. | **(ECF NO. 1)** |
| UNITED STATES OF AMERICA, et al., | **AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS** |
| Defendants. | |

Plaintiff is a federal prisoner proceeding pro se and in forma pauperis in this civil rights and tort action brought pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. His complaint is before the Court for screening.

**I.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion

thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.  PLEADING STANDARD

"Actions under [42 U.S.C.] § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991). Under Bivens, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. See Bivens, 403 U.S. at 397. To state a claim under Bivens, a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor. See Van Strum, 940 F.2d at 409.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III.  PLAINTIFF'S ALLEGATIONS

Plaintiff presently is incarcerated at United States Penitentiary–Tucson, but complains of acts that occurred during his incarceration at United States Penitentiary–Atwater ("USP-Atwater"). He names the following Defendants in their individual and official capacities: (1) "Company X," a business that manufactures the "black box"; (2) the United States of America; (3) the Federal Bureau of Prisons; (4) Warden Paul

Copenhaver; (5) Associate Warden Parent; (6) Captain Garcia; (7) Lieutenant Fenton, (8) John Doe #1, prison guard; (9) John Doe #2, prison guard; (10) J. Ontiveroz, prison guard; (11) Oliverez, prison guard; (12) Cisneros, prison guard; and (13) Jane Doe, Disciplinary Hearings Officer.

Plaintiff's allegations may be summarized essentially as follows:

On October 30, 2012, Plaintiff was housed in segregation. He and his cell mate were put in restraints and removed from their cell. They were not allowed to pack their personal property or designate who the property belonged to. Defendant Cisneros removed Plaintiff's property from the cell. Plaintiff did not receive his MP3 player when his belongings were returned to him.

On April 3, 2013, Defendants John Doe #1, John Doe #2, Fenton, Garcia, Parent, and Copenhaver placed Plaintiff in hard restraints for 24 hours without cause or justification. Hard restraints include handcuffs, a "black box," a restraining chain, and leg shackles. The black box is placed over handcuffs, making them immobile. The black box and handcuffs chafed Plaintiff's wrists, causing pain and permanent scarring. Defendants intended to inflict pain on Plaintiff. Defendants knew that Plaintiff would be unable to sleep, eat, or defecate while he was "black boxed."

Hard restraints are permitted only if necessary to protect an inmate from himself or others, or to protect property. Plaintiff did not engage in conduct warranting the use of hard restraints. Placement in hard restraints must be reviewed every two hours. Defendants fabricated a basis for keeping Plaintiff in hard restraints.

On April 14, 2013, Plaintiff was handcuffed behind the back. Defendant Ontiveroz grabbed Plaintiff and slammed him into the wall, floor, and an iron railing. Plaintiff suffered a concussion and headaches.

On May 1, 2013, Defendants John Doe #1, John Doe #2, Fenton, Garcia, Parent, and Copenhaver placed Plaintiff in hard restraints for 48 hours without cause or justification and fabricated a basis for keeping Plaintiff in hard restraints.

3

On May 3, 2013, Defendants Ontiveroz and Fenton, within the presence of Defendants Garcia and Parent, removed the black box, handcuffed Plaintiff behind his back, and escorted him to another cell occupied by two other prisoners. The other prisoners threatened to harm Plaintiff if he was placed in the cell. Plaintiff objected to being placed in the cell. The other prisoners were handcuffed behind their backs and attempted to shove Plaintiff as Plaintiff was being forced into the cell. One of the prisoners was injured. Defendants exited the cell and locked the door. The injured prisoner requested medical attention. Defendant Ontiveroz falsely stated that the prisoner reported being bit by Plaintiff. The prisoner actually was injured by one of the prison guards.

A "use of force" team escorted Plaintiff to a hard cell. Defendants Ontiveroz, John Doe #1, John Doe #2, Fenton, Garcia, Parent, and Copenhaver placed Plaintiff in hard restraints and restrained him to a mattress and concrete slab for 24 hours.

Defendant Ontiveroz wrote a false incident report charging Plaintiff with assaulting and kidnapping the other, injured prisoner. The report was written in retaliation for Plaintiff having reported Defendant Ontiveroz's April 14, 2013 assault against him.

Defendant Jane Doe reviewed the incident report written by Defendant Ontiveroz and conducted a disciplinary hearing. Plaintiff called the injured prisoner as a witness. The prisoner agreed to testify that staff caused his injury, that he was not bitten, and that he did not tell Defendant Ontiveroz that Plaintiff caused his injury. Plaintiff was not permitted to hear the prisoner's testimony. Afterward, the injured prisoner assured Plaintiff he had given testimony favorable to Plaintiff. However, Defendant Jane Doe mischaracterized the testimony as supporting Defendant Ontiveroz's version of the events.

Defendant Jane Doe found that Plaintiff had committed the charged offenses and imposed 45 days of disciplinary segregation, a 45-day loss of good time credit, and

4

deprivation of other privileges. Defendant Jane Doe did not provide Plaintiff with a disciplinary hearing report, thereby frustrating Plaintiff's ability to appeal her decision.

At various times between September 27, 2012 to June 17, 2014, Defendants Ontiveroz, Oliverez, and Cisneros deprived Plaintiff of outdoor exercise for minor and trivial reasons. Plaintiff complained to Defendants John Doe #1, John Doe #2, Cisneros, Ontiveroz, Oliverez, Fenton, Garcia, and Copenhaver. These Defendants approved the deprivation of Plaintiff's outdoor exercise.

Plaintiff seeks compensatory and punitive damages.

## IV.  ANALYSIS

### A.  Unrelated Claims

Federal Rule of Civil Procedure 18(a) states: "A party asserting a claim, counterclaim, cross-claim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)); see also Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences . . . .")

Plaintiff's claims generally are unrelated to one another. They encompass a range of complaints: the denial of outdoor exercise, the loss of his MP3 player, excessive force, the use of restraints, retaliation, and disciplinary procedures. Several claims involve

different defendants and do not arise out of the same transaction or occurrence. These claims may not all be joined in this action.

Plaintiff will be given leave to amend. If he chooses to do so, he must decide which transaction or occurrence he wishes to pursue in this action. He may join other claims involving the defendants involved in that transaction or occurrence. He may not join unrelated claims against additional defendants.

The following sections of this Order provide legal standards applicable to named Defendants and what the Court believes may be Plaintiff's intended claims.

### B.   Proper Defendants in a Bivens Action

Under the doctrine of sovereign immunity, a Bivens action will not lie against the United States, agencies of the United States, or federal agents in their official capacity. See FDIC v. Meyer, 510 U.S. 471, 486 (1994); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996); Cato v. United States, 70 F.3d 1103, 1110 (9th Cir. 1995). To the extent that Plaintiff seeks to sue the United States, the Federal Bureau of Prisons, or federal officers in their official capacities under Bivens, such claims are barred by the doctrine of sovereign immunity. Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985). Plaintiff also may not recover Bivens damages against "Company X," a private corporation. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 63 (2001) (declining to extend Bivens damages action to allow for recovery against private corporation acting under contract with the federal government).

### C.   Deprivation of Property

Plaintiff may intend to bring a Fourth Amendment claim for the deprivation of his MP3 player.

The Unites States Supreme Court has held that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson v. Palmer, 468 U.S. 517, 527 (1984). Thus, "the Fourth

Amendment's prohibition on unreasonable searches does not apply in prison cells." Id. at 530. Likewise, a prisoner does not have a Fourth Amendment right to be free from the seizure of his personal property. Id. at 528 n.8.

However, the Due Process Clause protects prisoners from being deprived of property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). While the deprivation of property pursuant to an established government procedure is actionable under the Due Process Clause, Hudson, 468 U.S. at 532 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982),[1] neither negligent nor unauthorized intentional deprivations of property by a governmental employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." Hudson, 468 U.S. at 533; see also Raditch v. United States, 929 F.2d 478, 481 (9th Cir. 1991) ("Although Hudson involved § 1983 and the Fourteenth Amendment, the same due process principles apply to the federal government through the Fifth Amendment.").

### D.  Seizure

Plaintiff alleges that the use of hard restraints without justification constituted an unlawful seizure in violation of the Fourth Amendment. Although the protections of the Fourth Amendment extend to incarcerated persons, Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997), Plaintiff's claim is more properly addressed as a conditions of confinement claim under the Eighth Amendment.

### E.  Eighth Amendment

It appears Plaintiff wishes to allege Eighth Amendment claims regarding the April 14, 2013 incident involving Defendant Ontiveroz, the use of hard restraints, and the deprivation of outdoor exercise.

The Cruel and Unusual Punishment Clause of the Eighth Amendment protects

---

[1] An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir.1985); see also  Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir.1987).

prisoners from the use of excessive physical force and from inhumane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994).

### 1. Excessive Force

To state an excessive force claim, a plaintiff must allege facts to show that the use of force involved an "unnecessary and wanton infliction of pain." Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Whether the force applied inflicted unnecessary and wanton pain turns on whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. The Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley, 475 U.S. at 321.

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotation marks omitted); see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries).

### 2. Conditions of Confinement

A conditions of confinement claim has both an objective and a subjective component. See Farmer, 511 U.S. at 834. "First, the deprivation alleged must be . . . sufficiently serious," and must "result in the denial of the minimal civilized measure of life's necessities." Id. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9. While the temporary denial of outdoor exercise with no medical effects is not a substantial deprivation, May v. Baldwin, 109

F.3d 557, 565 (9th Cir. 1997), the deprivation of regular outdoor exercise for a longer period may be sufficient to meet the objective requirement of the Eighth Amendment analysis. Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (denial of all outdoor exercise for six weeks meets objective Eighth Amendment requirement); Allen, 48 F.3d at 1086-88 (forty-five minutes of outdoor exercise per week for six weeks meets objective Eighth Amendment requirement).

Second, the prison official must have acted with "deliberate indifference" to a substantial risk of serious harm to the inmate. Farmer, 511 U.S. at 834. "Mere negligence is not sufficient to establish liability." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Rather, a plaintiff must set forth facts to show that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

### F.     First Amendment Retaliation

Plaintiff wishes to allege a First Amendment retaliation claim against Defendant Ontiveroz for writing a false incident report regarding the alleged altercation between Plaintiff and another prisoner.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can

1  be difficult to establish the motive or intent of the defendant, a plaintiff may rely on
2  circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that
3  a prisoner established a triable issue of fact regarding prison officials' retaliatory motives
4  by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108
5  F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)
6  ("timing can properly be considered as circumstantial evidence of retaliatory intent").

7       In terms of the third prerequisite, filing a grievance is a protected action under the
8  First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

9       With respect to the fourth prong, "[it] would be unjust to allow a defendant to
10 escape liability for a First Amendment violation merely because an unusually determined
11 plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty.,
12 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an
13 official's acts would chill or silence a person of ordinary firmness from future First
14 Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192
15 F.3d at 1300).

16      With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison
17 authorities' retaliatory action did not advance legitimate goals of the correctional
18 institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson,
19 778 F.2d 527, 532 (9th Cir. 1985).

20      **G.   Procedural Due Process**

21     Plaintiff alleges that his procedural due process rights were violated in his
22 disciplinary proceedings.

23     The Due Process component of the Fifth Amendment entitles prisoners to certain
24 processes before they are subjected to administrative or disciplinary hearings and
25 classifications. Where the government has made good time credit subject to forfeiture
26 only for serious misbehavior, prisoners subject to a loss of good-time credits must be
27 given advance written notice of the claimed violation, a right to call witnesses and
28

10

1  present documentary evidence where it would not be unduly hazardous to institutional
2  safety or correctional goals, and a written statement of the finder of fact as to the
3  evidence relied upon and the reasons for the disciplinary action taken. See Wolff v.
4  McDonnell, 418 U.S. at 563–66. If the inmate is illiterate, or the issue is so complex that
5  it is unlikely the inmate will be able to collect and present the evidence necessary for an
6  adequate comprehension of the case, the inmate should have access to help from staff
7  or a sufficiently competent inmate designated by the staff. However, confrontation,
8  cross-examination, and counsel are not required. Id. at 567-70. The decision to revoke
9  such good time credits must be supported by some evidence in the record.
10 Superintendent v. Hill, 472 U.S. 445, 454 (1985).

   **H.   Heck Bar**

   Often referred to as the Heck bar, the favorable termination rule bars any civil rights claim which, if successful, would demonstrate the invalidity of confinement or its duration. Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005); Heck v. Humphrey, 512 U.S. 477, 489 (1994) (until and unless favorable termination of the conviction or sentence occurs, no cause of action under § 1983 exists); Martin v. Sias, 88 F.3d 774, 775 (9th Cir. 1996) (extending rule to Bivens actions).

   It is unclear from Plaintiff's complaint whether the 45-day loss of good time credit following his disciplinary proceedings will affect the length of his sentence. Ramirez v. Galaza, 334 F.3d 850, 856 (9th Cir. 2003) (the application of Heck "turns solely on whether a successful § 1983 action would necessarily render invalid a[n] . . . administrative sanction that affected the length of the prisoner's confinement"). Nonetheless, Plaintiff is advised that he may not challenge the duration of his confinement in a Bivens action, and instead must do so, if at all, in a habeas corpus proceeding.

### I. Access to Courts

Plaintiff has a constitutional right of access to the courts, and prison officials may not actively interfere with his right to litigate. Silva v. Di Vittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis v. Casey, 518 U.S. 343, 354 (1996). Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). A plaintiff must show that he suffered an "actual injury" i.e., prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. Lewis, 518 U.S. at 348-49. An "actual injury" is one that hinders the plaintiff's ability to pursue a legal claim. Id. at 351.

### J. Federal Tort Claims Act

The FTCA, 28 U.S.C. §§ 1346(b), 2671–2680, waives the sovereign immunity of the United States for certain torts committed by federal employees. FDIC v. Meyer, 510 U.S. 471 (1994). The FTCA provides that district courts have exclusive jurisdiction over civil actions against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee" of the federal government while acting within the scope of his office or employment. 28 U.S.C. § 1346(b)(1). The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated. 28 U.S.C. § 2674.

The United States is the only proper defendant in a suit brought pursuant to the FTCA. FDIC v. Craft, 157 F.3d 697, 706 (9th Cir. 1998); Kennedy v. United States Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998). "A claim against [a federal agency] in its own name is not a claim against the United States." Kennedy, 145 F.3d at 1078. Nor is an agency a proper defendant under the FTCA. Craft, 157 F.3d at 706 (citing Shelton v. United States Customs Serv., 565 F.2d 1140, 1141 (9th Cir. 1977)).

Under the FTCA a claim must be filed with the appropriate federal agency within two years of its accrual and suit must be commenced within six months of the agency's denial of the claim. 28 U.S.C. § 2401(b). This administrative exhaustion requirement is mandatory and jurisdictional. McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). Exhaustion must be affirmatively alleged in the complaint. Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980).

California law controls the substantive elements of a tort claim under the FTCA. See 28 U.S.C. § 1346(b)(1); Delta Sav. Bank v. U.S., 265 F.3d 1017, 1025 (9th Cir. 2001). Under California law, a public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d).

The elements of negligence under California law are: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 70 Cal. Rptr. 3d 519 (2008)).

In California, the elements of a claim for civil battery based on excessive force are: "(1) the defendant intentionally touched the plaintiff, (2) the defendant used unreasonable force to arrest, prevent the escape of, or overcome the resistance of the plaintiff, (3) the plaintiff did not consent to the use of that force, (4) the plaintiff was harmed, and (5) the defendant's use of unreasonable force was a substantial factor in causing the plaintiff's harm." Pryor v. City of Clearlake, 877 F. Supp. 2d 929, 952 (N.D. Cal. 2012). "A claim for assault requires, among other elements, proof that the defendant threatened to touch the plaintiff in a harmful or offensive manner." Id.

Plaintiff also wishes to allege a tort of "unlawful restraint." However, Plaintiff cites no authority to support the existence of such a tort under the facts of this case, and the Court finds none.

## V. CONCLUSION AND ORDER

Plaintiff's complaint contains unrelated claims against different defendants in violation of Federal Rule of Civil Procedure 20(a)(2). The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff is advised that, if he chooses to amend, he may only allege claims that (a) arise out of the same transaction, occurrence, or series of transactions or occurrences, and (b) present questions of law or fact common to all defendants named therein. Fed. R. Civ. P. 20(a)(2). Plaintiff must file individual actions for unrelated claims against unrelated defendants.

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an

original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of his Complaint, filed July 25, 2014;

2. Plaintiff's Complaint is dismissed for failure to state a claim upon which relief may be granted;

3. Plaintiff shall file an amended complaint within thirty (30) days; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend that this action be dismissed, with prejudice, for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated:   November 24, 2014           /s/ *Michael J. Seng*
                                     UNITED STATES MAGISTRATE JUDGE

15